UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

YUSEF CHAPMAN,

Defendant.

Mag. No. 24-13147 (LDW)

**OPINION AND ORDER**

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is defendant Yusef Chapman's motion to dismiss the criminal complaint against him with prejudice on the basis of a Speedy Trial violation. (ECF 19, 22). The Government acknowledges the Speedy Trial violation but urges the Court to dismiss the complaint without prejudice. (ECF 21). The Court heard oral argument on the motion on May 7, 2026. Having considered the parties' written submissions and argument, the complaint will be dismissed without prejudice.

## I.    BACKGROUND

In a criminal complaint filed July 12, 2024, the Government alleges as follows. On March 18, 2024, law enforcement officers in Kenilworth, New Jersey stopped Yusef Chapman's vehicle for committing several traffic infractions. (Compl. ¶ 1, ECF 1). A passenger in the car told the officers "whatever you find in the car, it isn't mine." (*Id.* ¶ 2). Law enforcement subsequently conducted a dog sniff of the vehicle, and the dog alerted to the presence of illegal drugs. (*Id.* ¶ 3). The officers then searched the vehicle and recovered a 9mm handgun loaded with 7 rounds of ammunition, 24 pills suspected to be Xanax, a plastic bag containing a white powder substance suspected to be cocaine, 7 glassine envelopes containing a white powder substance, 3 electronic scales, 73 baggies typically used to package narcotics for distribution, and 4 defaced prescription

bottles containing liquid suspected to be Promethazine.  (*Id.* ¶ 4).  A search of Chapman's person incident to arrest revealed 3 glassine envelopes and approximately $3,529 in cash.  (*Id.* ¶ 5).

Chapman was charged with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute cocaine and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).  The felon-in-possession charge carries a maximum penalty of 15 years' imprisonment.  The narcotics charge carries a maximum penalty of 20 years' imprisonment.  If convicted of the felon-in-possession charge, the Government estimates that Chapman's Guidelines range for sentencing would be 110-137 months, or 84-105 months if he were to plead guilty.  (Gov't Opp. at 7-9, ECF 21).[1]

Chapman was arrested on July 29, 2024, and the Court held his initial appearance the same day.  The Court appointed the Federal Public Defender's Office to represent Chapman, and he consented to detention with the right to make a bail application at a later time.  (ECF 6, 7).  Chapman appeared before the undersigned for a bail hearing on August 2, 2024.  The Court denied bail, finding that no condition or combination of conditions of release would reasonably assure the safety of the community due to:  (1) the weight of evidence against Chapman; (2) the length of incarceration he faces if convicted; (3) his extensive criminal history including multiple prior firearms charges, assault charges, and domestic violence charges, and prior felony convictions for aggravated assault, unlawful possession of weapons, and possession of controlled dangerous substances; and (4) the fact that the charged conduct occurred while Chapman was on probation. (ECF 11; Gov't Opp., Ex. 2).

---

[1] The Government estimates that the base offense level for the narcotics charge would be 12 and likely would not affect the total Guidelines calculation.  (Gov't Opp. at 9).

In the course of the prosecution, the Government and defense counsel agreed to 3 continuance orders to allow the parties to prepare and attempt to resolve the case prior to indictment. The continuance orders excluded time under the Speedy Trial Act from July 29, 2024 to September 27, 2024, October 11, 2024 to December 10, 2024, and December 30, 2024 to February 28, 2025. (ECF 9, 12, 13). No further continuances were entered after the third continuance order expired on February 28, 2025.

In Spring 2025, the Court received a letter directly from Chapman expressing some dissatisfaction with his attorney. (June 4, 2025 Tr. at 3:10-12, ECF 16). The Court conducted a status conference with the parties on June 4, 2025, during which Chapman determined that he wanted to continue to be represented by the Federal Public Defender's Office. (*Id.* at 3:16-20). With respect to the status of the case, the parties informed the Court that the Government had produced pre-indictment discovery to the defense and they were engaged in plea discussions. (*Id.* at 4:13-23). Finally, the Government confirmed its awareness of "the defense position on continuances." (*Id.* at 3:22-4:7).[2]

In January 2026, the Court received a *pro se* letter from Chapman requesting new counsel and asserting his speedy trial rights. (Núñez Cert. ¶ 7, ECF 19-2). At a February 11, 2026 status conference, the Court relieved the Federal Public Defender's Office and appointed present counsel to represent the defendant. (ECF 17, 18). Three weeks after his appointment, and one year after the expiration of the last continuance order, defense counsel filed the instant motion to dismiss the

---

[2] Chapman's former counsel states in her certification in support of the motion: "On May 29, 2025, a status conference was conducted by Judge Wettre wherein Mr. Chapman asserted his right to a speedy trial." (Núñez Cert. ¶ 6, ECF 19-2). The status conference she references occurred on June 4, 2025. That conference was transcribed, and the record reflects only the Court's questioning whether the Government was aware of "the defense position on continuances." The Court then asked, "Is there anything I need to do?" and defense counsel replied, "I don't think so, Your Honor." (June 4, 2025 Tr. at 4:5-10).

complaint with prejudice pursuant to the Speedy Trial Act, the Sixth Amendment, and Rule 48(b) of the Federal Rules of Criminal Procedure.

## II.      DISCUSSION

### A.      Speedy Trial Act

The Speedy Trial Act requires the Government to file an information or indictment against a defendant within 30 days of their arrest.  18 U.S.C. § 3161(b).  Certain periods of delay are excluded from the 30-day calculation, including "[a]ny period of delay resulting from a continuance granted by any judge on [her] own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government."  *Id.* § 3161(h)(7)(A).  If the Government fails to file an information or indict the defendant within 30 non-excludable days of arrest, the charges in the complaint "shall be dismissed or otherwise dropped."  *Id.* § 3162(a)(1).

There is no dispute that the 30-day Speedy Trial period has long since expired.  The sole issue before the Court is whether the complaint should be dismissed with or without prejudice. That decision is "left to the guided discretion of the district court."  *United States v. Taylor*, 487 U.S. 326, 335 (1988).  The Speedy Trial Act enumerates three factors that inform the Court's exercise of discretion:  "[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  18 U.S.C. § 3162(a)(1). In conjunction with these factors, the Court also considers whether the defendant has been prejudiced by the delay.  *Taylor*, 487 U.S. at 334.  The Court addresses each factor in turn.

### 1.    Seriousness of the Offense

The Court first evaluates the seriousness of the offense being dismissed because "'[t]he graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence.'" *United States v. Stevenson*, 832 F.3d 412, 419-20 (3d Cir. 2016) (quoting *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988)).    Defendant concedes that the drug and firearm charges against him are serious offenses. (Motion to Dismiss at 7, ECF 19-2).    Indeed, courts in this Circuit overwhelmingly characterize firearm- and narcotics-related offenses as serious, weighing in favor of dismissal without prejudice. *See, e.g.*, *Stevenson*, 832 F.3d at 420 ("We join our sister courts today and hold that Stevenson's heroin and firearms offenses are serious crimes for purposes of the Speedy Trial Act.    Accordingly, the District Court rightly held that the first factor weighed in favor of dismissal without prejudice."); *United States v. Palmer*, 22-cr-00282 (GC), 2024 WL 3952074, at *5-6 (D.N.J. Aug. 27, 2024) (finding § 922(g)(1) felon-in-possession charge to be serious offense warranting dismissal of indictment without prejudice); *United States v. Law*, 526 F. Supp. 2d 513, 519 (E.D. Pa. 2007) (finding possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and felon-in-possession to be serious offenses warranting dismissal of indictment without prejudice).    The nature of the charges against Chapman – particularly with respect to the loaded handgun recovered from his vehicle – and the stiff penalties attached to those charges are undeniably serious, heavily weighing in favor of dismissing the complaint without prejudice.

### 2.    Facts and Circumstances of the Case

With respect to the second factor, the Court considers "the reasons for the delay: did it stem from intentional dilatory conduct or a pattern of neglect on the part of the Government, or rather,

5

from a relatively benign hitch in the prosecutorial process?" *Stevenson*, 832 F.3d at 420 (quotation omitted). The Government accepts responsibility for the delay in seeking an indictment, stating that it was "the product of regrettable inattention and insufficient diligence toward resolution or indictment." (Gov't Opp. at 10). Defendant does not argue otherwise. There is nothing in the record to suggest that the Government acted in bad faith, with intent to delay the proceedings, or for the purpose of obtaining a tactical advantage. The Government did produce pre-indictment discovery to the defense and engaged in plea negotiations with defense counsel, who did not act with any particular sense of urgency herself. The motion record does not reflect a pattern of neglect by the Government. Instead, it appears the prosecutor was overly confident that the parties eventually would reach a plea deal, and he allowed his attention to stray from the Speedy Trial clock. While the Court does not minimize the Government's troubling lack of diligence, it finds that the delay resulted from prosecutorial negligence, counseling in favor of a dismissal without prejudice. *See United States v. Arias-Ruiz*, 08-mj-7208 (ES), 2009 WL 704168, at *2 (D.N.J. Mar. 16, 2009) ("A dismissal with prejudice [under the Speedy Trial Act] should be reserved for cases in which there are regular and frequent indications of negligence, or evidence of an intent to delay with the purpose of gaining a strategic or tactical advantage."). *See also United States v. Cisse*, 12-mj-3722 (JBC), 2025 WL 2412777, at *4 (D.N.J. June 25, 2025) (attributing 18-month Speedy Trial delay to negligence and recommending dismissal of criminal complaint without prejudice), *R&R adopted*, 2025 WL 2412510 (D.N.J. Aug. 19, 2025).

### 3.    Impact of Reprosecution

Finally, the Court considers the impact of reprosecution on the administration of the Speedy Trial Act and the administration of justice. "The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice

as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Stevenson*, 832 F.3d at 422 (quotation omitted). "Prejudice can include both '(1) trial prejudice, i.e., prejudice in the defendant's ability to mount a defense at trial, and (2) non-trial prejudice,' such as restrictions on the defendant's liberty." *Palmer*, 2024 WL 3952074, at *9 (quoting *United States v. Bert*, 814 F.3d 70, 82 (2d Cir. 2016)).

The Court's inquiry with respect to trial prejudice focuses on whether the Speedy Trial violation "undermined [defendant's] ability to prepare for trial" or "impaired [his] ability to mount an effective defense." *Stevenson*, 832 F.3d at 422 (quotation omitted). Defendant argues that he has suffered actual prejudice as a result of the Government's delay because he cannot file what he believes is a viable motion to suppress the evidence recovered in the search of his vehicle unless and until he is indicted. The Government points out that the March 18, 2024 traffic stop at issue was recorded on police body and dash cameras. The camera footage and police reports from the stop have already been produced to the defense, and Chapman has not identified any evidence he would use in support of the suppression motion that has been lost or witnesses who are no longer available due to the delay. And while the passage of time may affect law enforcement's recollection of Chapman's stop, search, and arrest, any gaps in a Government witness' recollection would benefit the defense. In other words, defendant's ability to bring a suppression motion – should he be indicted – or otherwise prepare his defense has not been lost or impaired in any way.[3]

---

[3] Although he does not say so directly, defendant's characterization of the motion as "viable" implies that he believes a District Judge would grant the motion and the charges against him would be dismissed. Any alleged prejudice stemming from defendant's presumed success on a suppression motion is highly speculative. This Court's role is not to evaluate the merits of a contemplated motion that would be presented to another judge; instead, the inquiry into trial prejudice focuses on whether defendant has lost the ability to pursue the motion due to the Government's delay. As discussed above, he has not.

With respect to non-trial prejudice, defendant argues that the length of the delay in this case is presumptively prejudicial, particularly because he has been detained since his July 29, 2024 arrest. Defendant relies on *United States v. Martinez*, in which Judge Bassler found that a 270-day Speedy Trial violation during which the defendant was detained "mandates a dismissal with prejudice," and asks this Court to find the same. 75 F. Supp. 2d 360, 367 (D.N.J. 1999). Defendant argues that his period of detention was longer than that in *Martinez*, warranting dismissal of the complaint with prejudice.

Defendant's detention for the entirety of the period since the Speedy Trial clock lapsed is unquestionably serious. The Court recognizes that "[t]he longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty." *Taylor*, 487 U.S. at 340. That being said, there is no brightline rule that a delay above a certain threshold requires dismissal with prejudice, and "[i]f the fact that a defendant is detained during the period of delay were to dictate the nature of the dismissal, *all* pretrial detainees whose rights were violated under the Speedy Trial Act would receive a dismissal with prejudice. This would render Congress's designation of two types of dismissal largely irrelevant." *United States v. Killingsworth*, 507 F.3d 1087, 1091 (7th Cir. 2007). *See United States v. Lloyd*, 50 F.4th 648, 659 (7th Cir. 2022) ("[J]ust because a defendant was detained pretrial does not mean the charges must be dismissed with prejudice."); *United States v. Cano-Silva*, 402 F.3d 1031, 1035 (10th Cir. 2005) (noting that although length of delay under the Speedy Trial Act "is not insignificant, neither is it dispositive").

Moreover, the Court notes that when defendant appeared before the undersigned on June 4, 2025 and purportedly orally asserted his right to a speedy trial, unbeknownst to the Court more than 100 non-excludable days had already elapsed. Defendant had ample grounds to file a motion

8

to dismiss for violation of the Speedy Trial Act that very day.  Instead, he waited seven months to seek new counsel and nine months to file the instant motion.  While a criminal defendant has no obligation to ensure that he is indicted in a timely manner, Chapman himself may have prolonged his period of pre-indictment detention by holding back from pursuing dismissal of the complaint.  This does not erase the fact that defendant suffered prejudice due to his detention, but it is a mitigating consideration.  *See Bert*, 814 F.3d at 82 ("[A] district court is entitled to construe a defendant's delay in articulating his cognizance of the [Speedy Trial] violation as evidence that he did not suffer actual prejudice, [but] this fact is not fatal to the defendant's claim, and it is not the end of the court's inquiry into prejudice.").  *See also United States v. Jones*, 213 F.3d 1253, 1257 (10th Cir. 2000) ("[W]hile the court and the government are each partly responsible for effectuating a defendant's right to a speedy trial, a defendant that lets the time run without asserting his rights under the Act has less of a claim to a dismissal with prejudice than a defendant who makes a timely assertion, but is unheeded."); *United States v. Manzo*, 20-cr-555 (SDW), 2024 WL 733415, at *2 (D.N.J. Feb. 22, 2024) (noting that "Defendant was affirmatively informed by the Government of the potential STA violation *nine months* before he filed the instant motion" and dismissing indictment without prejudice under the Speedy Trial Act).[4]

Certainly, there are cases in which the prejudice suffered by defendants due to periods of pre-indictment detention shorter than Chapman's justified dismissal of their criminal complaints with prejudice.  *See, e.g.*, *Martinez*, 75 F. Supp. 2d at 367.  But this case presents unique circumstances in that neither the Government nor the defense actively pursued the case for months,

---

[4] The Government suggests that Chapman's prejudice is mitigated by the fact that he is earning jail time credit that will be applied towards a significant custodial sentence.  That may well be true, but it presumes that Chapman is convicted and receives a Guidelines sentence, neither of which has yet occurred.

resulting in a significant Speedy Trial delay.  Given the "relatively benign" reason for the Government's delay, there is no compelling need to issue the most severe sanction available in order to address the prosecutor's negligence.  *See Zedner v. United States*, 547 U.S. 489, 499 (2006) ("The less severe sanction (dismissal without prejudice) lets the court avoid unduly impairing the enforcement of federal criminal laws—though even this sanction imposes some costs on the prosecution and the court, which further encourages compliance.").  And finally, while Chapman did suffer some prejudice as a result of his pre-indictment detention, the Court cannot ignore the grave nature of the firearm and narcotics charges against him.  Having considered each of the statutory factors, the Court finds that the appropriate remedy for the Speedy Trial violation is dismissal of the criminal complaint without prejudice.

While the Court determines that dismissal without prejudice is appropriate under the Speedy Trial Act, it proceeds to consider whether defendant's Sixth Amendment right to a Speedy Trial has been violated, which would require dismissal with prejudice.  *United States v. Velazquez*, 749 F.3d 161, 186 (3d Cir. 2014).

### B.      Sixth Amendment

The Supreme Court has "established a four-factor test for evaluating whether the constitutional right to a speedy trial has been violated.  The inquiry focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant." *Id.* at 174 (citing *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972)).  "All factors must be considered and weighed as no one factor is dispositive nor 'talismanic.'" *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993) (quoting *Barker*, 407 U.S. at 533).  Defendant's motion lightly touches on the *Barker* factors, arguing only that "Mr. Chapman

is accused of an ordinary street crime, making the delay inexcusable." (Motion to Dismiss at 11). The Court nonetheless proceeds to consider each factor in turn.

### 1.    Length of Delay

The first factor serves a gatekeeping role, as the court "first decides whether the delay is long enough that it should trigger analysis of other *Barker* factors.  If it is, the length of the delay is also separately weighed in the court's analysis of the remaining factors." *Velazquez*, 749 F.3d at 174.  The period of delay is measured from the date of arrest or indictment.  *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009).  The time between Chapman's arrest on July 29, 2024 and the date he filed the motion to dismiss, March 4, 2026, totals approximately 19 months.  The Third Circuit has found that a delay of 14 months is sufficiently lengthy to require consideration of the remaining *Barker* factors, *id.*, and the Government concedes that, while it is not dispositive of a constitutional violation, the 19-month delay without indictment warrants further review.

This is a single-defendant case involving firearm and narcotics charges.  Although the charges against Chapman are very serious, they are not especially complex.  As, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge," *Barker*, 407 U.S. at 531, the Government's failure to bring this relatively straightforward case to resolution or indictment after 19 months weighs somewhat in favor of defendant.  *See United States v. Davenport*, 729 F. Supp. 3d 475, 487 (W.D. Pa. 2024) ("While the delay here of 16 months crosses the threshold of prejudicial delay to justify analysis of the remaining *Barker* factors, such delay is not on the scale the Supreme Court has characterized as 'extraordinary.'").  *Cf. United States v. Mensah-Yawson*, 489 F. App'x 606, 611 (3d Cir. 2012) (15-month delay sufficient to trigger analysis of *Barker* factors but did not weigh in favor of

defendant because case involved "a more complicated crime" and "entailed charges against four codefendants for conspiring to counterfeit securities").

### 2. Reason for the Delay

The Court next considers the reasons for the delay. The Third Circuit has identified several categories of delay and the weight to be attributed to each: (1) "[a] deliberate effort by the Government to delay the trial 'in order to hamper the defense' weighs heavily against the Government"; (2) "[a] 'more neutral reason such as negligence or overcrowded courts' also weighs against the Government, though 'less heavily'"; and (3) "'a valid reason, such as a missing witness, should serve to justify appropriate delay.'" *Battis*, 589 F.3d at 679 (quoting *Barker*, 407 U.S. at 531). Conversely, "'delay caused by the defense weighs against the defendant,' including 'delay caused by the defendant's counsel.'" *Id.* at 679-80 (quoting *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)).

Approximately 6 of the 19 months at issue are attributable to continuances to which defendant consented. As to the remaining time, the Court already has determined that the delay resulted from prosecutorial negligence, and not from the Government's intent to delay the proceedings or intentional misconduct. Thus, this factor does not weigh heavily against the Government.

### 3. Defendant's Assertion of His Speedy Trial Rights

"The third *Barker* factor requires a court to examine '[w]hether and how a defendant asserts his [speedy-trial] right,' including 'the frequency and force' of such assertions." *Velazquez*, 749 F.3d at 181-82 (quoting *Barker*, 407 U.S. at 531, 529). A represented defendant may show that he asserted his right to a speedy trial by "identify[ing] 'a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success.'

By contrast, 'informal correspondence' to the court by a represented defendant is less convincing." *Battis*, 589 F.3d at 681 (quoting *Hakeem*, 990 F.2d at 766). Defendant claims that he first asserted his right to a speedy trial at a June 4, 2025 status conference. (Núñez Cert. ¶ 6). The record is not so clear. Neither defendant nor his counsel actually stated on the record what their "position on continuances" was. It could be that defendant objected to any further continuances, but it is also possible that consent to further continuances was conditioned on some *quid pro quo* from the Government. Regardless, defense counsel did not request any kind of relief from the Court or from the Government at that conference. And while defendant asserted his speedy trial rights in a January 2026 *pro se* letter to the Court, (*id.* ¶ 7), this is precisely the type of informal correspondence that is not given substantial weight in the absence of a contemporaneous motion.

Defendant's formal assertion of his speedy trial rights on March 4, 2026 came 19 months after his arrest and initial appearance and at least a year after the Speedy Trial clock had run. As discussed above, defendant, through counsel, could have moved to dismiss the complaint even before the June 4, 2025 conference; he did not do so, for reasons that are unknown. If defendant was dissatisfied with the Federal Public Defender's Office for failing to pursue dismissal of the complaint, he had the opportunity to request new counsel at the June 4, 2025 conference. Instead, he opted to stick with his counsel and say nothing about the Speedy Trial clock for another seven months. And despite the fact that he was detained during that period, defendant never renewed an application to be released on bail. Given the extended period of inaction by the defense with respect to Chapman's Sixth Amendment rights, the Court finds that this factor weighs against him. *See United States v. Vasquez-Uribe*, 426 F. App'x 131, 138 (3d Cir. 2011) (finding no Sixth Amendment violation where "Vasquez-Uribe's first formal assertion of his right to a speedy trial did not come until November 24, 2008, more than one year after his initial appearance"). *See also*

13

*United States v. Green*, No. 21-3171, 2022 WL 4244275, at *5 (3d Cir. Sept. 15, 2022) (weighing third *Barker* factor against defendant who "clearly asserted his rights each time he filed a motion to dismiss. But each one was filed later than it could have been. He filed the first over eight months after the Speedy Trial Act clock had run"); *United States v. Williams*, 3:18-cr-153, 2021 WL 278306, at *14 (M.D. Pa. Jan. 27, 2021) ("Because Defendant did not file the pending motion [to dismiss] until long past the time he could have done so, this factor does not weigh in favor of finding a Sixth Amendment speedy trial violation.").

### 4.    Prejudice to Defendant

The final *Barker*, prejudice to the defendant, is

> assessed in the light of the interests of defendants which the speedy trial right was designed to protect. [The Supreme] Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532. A defendant may also "claim prejudice without providing affirmative proof of particularized prejudice if the delay is excessive." *Mensah-Yawson*, 489 F. App'x at 612 (quotation omitted).

Here, defendant does not contend that he has suffered anxiety beyond that which affects all criminal defendants, detained or not. As discussed above, defendant has not established that his ability to bring a suppression motion or otherwise prepare his defense has been impaired due to the passage of time. Nor can the Court say that the length of the delay, standing alone, is so excessive as to be presumptively prejudicial. *See United States v. Claxton*, 766 F.3d 280, 296 (3d Cir. 2014) (finding no presumption of prejudice due to three-and-a-half year delay between indictment and trial, 19 months of which were attributable to the Government); *United States v. Villalobos*, 560 F. App'x 122, 127 (3d Cir. 2014) ("[A] delay of sixteen and a half months is

14

insufficient to presume prejudice in this [Sixth Amendment] context."); *Battis*, 589 F.3d at 683 ("[P]rejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government."). In any event, defendant acquiesced in the delay by refraining from asserting his Sixth Amendment rights.

Instead, defendant argues that he has been subjected to oppressive pretrial detention in the Essex County Correctional Facility. In determining whether pretrial incarceration is oppressive, the Court considers the conditions of defendant's confinement, not just its duration. *Hakeem*, 990 F.2d at 761. The Third Circuit has made clear that "pretrial detention, coupled with a fourteen and one-half month delay, [does not] permit[] an automatic inference of enough prejudice to balance that factor in [defendant's] favor without proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment." *Id.* Defendant cites three news articles reporting understaffing at the facility and complaints of suspicious inmate deaths in 2022 as evidence of the conditions of his confinement. He also states that there were two officer suicides in 2025. While the conditions of any period of confinement are challenging, defendant makes no effort to establish whether and how understaffing, officer suicide, or inmate deaths that occurred prior to his detention affect him personally, much less "place the physical or mental integrity of the accused in jeopardy." *Wells v. Petsock*, 941 F.2d 253, 257 (3d Cir. 1991). In the Court's view, Chapman is similarly situated to the detainee in *Hakeem*, and although his confinement has been extended, he has not established that it is oppressive under the Sixth Amendment. *See Villalobos*, 560 F. App'x at 127 ("Detained for approximately sixteen and a half months prior to trial, similar to the length of detention in *Hakeem*, Villalobos points to no sub-standard conditions of imprisonment that would render it oppressive. We therefore conclude that he has not established

15

this type of prejudice."); *Hakeem*, 990 F.2d at 761 ("We do not think pretrial incarceration of either thirteen or fourteen and one-half months demonstrates *per se* oppressive pretrial delay."); *Williams*, 2021 WL 278306, at \*16-17 (finding no Sixth Amendment violation where defendant was detained for over two years prior to trial); *United States v. Green*, 471 F. Supp. 3d 577, 603 (M.D. Pa. 2020) (700-day period of detention not found to be oppressive because "Defendant does not allege sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment as generally required to establish prejudice due to oppressive pretrial incarceration").

Having considered each of the *Barker* factors, the Court gives heavy weight to the fact that defendant waited in jail for a year after the Speedy Trial clock expired before asserting his rights and has not established he has suffered the type of prejudice the Sixth Amendment speedy trial right is intended to prevent. The Court concludes that defendant has not established that he was deprived of his constitutional right to a speedy trial. Therefore, the motion to dismiss the complaint pursuant to the Sixth Amendment is denied.

### C.    Rule 48(b)

Finally, defendant moves to dismiss the criminal complaint pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure, which provides that "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R. Crim. P. 48(b). "Rule 48(b) is a vehicle for enforcing a defendant's speedy trial right" and "a restatement of the court's inherent power to dismiss a case simply for want of prosecution." *United States v. Dreyer*, 533 F.2d 112, 113 n.1 (3d Cir. 1976). However, "when a Rule 48(b) claim is based on prejudice arising from the delay, the case should be analyzed on constitutional grounds." *United*

16

*States v. Nikparvar-Fard*, 18-cr-101, 2022 WL 17996018, at \*12 (E.D. Pa. Dec. 29, 2022).  As the Court has already determined that no Sixth Amendment violation has occurred, there is no basis to dismiss the complaint on those grounds under Rule 48(b).  To the extent defendant asks the Court to exercise its inherent authority to dismiss the complaint with prejudice for lack of prosecution pursuant to Rule 48(b), the Court declines to do so.  The Court has determined that dismissal without prejudice is the appropriate remedy for the delay in this case.

### III.    CONCLUSION

For the foregoing reasons, the criminal complaint against Chapman will be dismissed without prejudice pursuant to the Speedy Trial Act.  The Clerk of Court is directed to terminate the motion at ECF 19.

 **IT IS SO ORDERED.**

Dated:  June 3, 2026

 *s/ Leda Dunn Wettre*
 Hon. Leda Dunn Wettre
 United States Magistrate Judge